# United States Court of Appeals

## For the Eighth Circuit

_____

No. 23-2839

_____

United States of America

*Plaintiff - Appellee*

v.

Tyrone Scott Cameron

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: January 12, 2024
Filed: April 18, 2024

_____

Before SMITH, Chief Judge,[1] GRUENDER and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Following a three-day trial, a jury found Tyrone Cameron guilty of being a felon in possession of ammunition. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(2). The

_____

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024. *See* 28 U.S.C. § 45(a)(3)(A).

district court[2] sentenced Cameron to 120 months' imprisonment, followed by a 3-year term of supervised release. On appeal, Cameron asserts (1) there was insufficient evidence to support his conviction; (2) his conviction violates the Second Amendment in light of *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022); (3) the district court should not have admitted into evidence his prior felony convictions involving the use of firearms; and (4) the Government engaged in prosecutorial misconduct during closing arguments.

We begin by addressing Cameron's challenge to the sufficiency of the evidence. Cameron contends the evidence was insufficient to support his conviction due to a lack of physical evidence and identification testimony connecting him directly to the possession of ammunition. We review sufficiency of the evidence challenges *de novo*, "viewing the evidence and the jury's credibility determinations in the light most favorable to its verdict and reversing only if no reasonable jury could have found [the defendant] guilty." *United States v. Obi*, 25 F.4th 574, 577 (8th Cir. 2022).

Viewing the evidence in the light most favorable to the verdict, we conclude a reasonable jury could have found there existed ample circumstantial evidence to support Cameron's conviction. *See United States v. Seals*, 915 F.3d 1203, 1205 (8th Cir. 2019) ("A conviction may be based on circumstantial as well as direct evidence."); *United States v. Everett*, 977 F.3d 679, 686 (8th Cir. 2020) ("[F]orensic evidence is not necessary for a firearms conviction."). To connect Cameron to the possession of ammunition, the Government sought to show that Cameron shot a man named Jeffrey Gillom at the Hickman Flats apartment complex in Des Moines, Iowa, on April 3, 2022. Surveillance footage from Hickman Flats, as well as testimony from Cameron's girlfriend, Heather Karl, sufficiently connected Cameron to the shooting.

---

[2]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

Karl testified that she and Cameron drove to Hickman Flats in a Cadillac on the night of the shooting. Karl observed Cameron and Gillom quarrel over money and Gillom strike Cameron on the head with an unknown object. Cameron told Karl that he "wanted to kill" Gillom and left Hickman Flats without her. Cameron subsequently called Karl to confirm there were no police in the area. After Karl confirmed there were no police in the area, Cameron told Karl to walk to a nearby QuikTrip. While walking towards the QuikTrip, Karl heard gunshots and turned back towards Hickman Flats. She walked down 23rd Street, which connected to the back of Hickman Flats via a dirt path, and saw the same Cadillac she and Cameron had been driving earlier.

Surveillance footage from Hickman Flats showed Cameron and Karl arriving at the apartment complex at 9:22 p.m., Gillom striking Cameron on the head with an unknown object, and Cameron leaving alone in a Cadillac at 9:36 p.m. Between 9:40 and 10:09 p.m., surveillance footage captured Karl walking around Hickman Flats while on her cellphone. Cameron's cellphone records revealed that Cameron made several phone calls to Karl during this time period.

At 10:12 p.m., surveillance footage captured an individual emerging from the dirt path connecting Hickman Flats with 23rd Street and entering the apartment complex. The individual's identity could not be discerned from surveillance footage because the individual wore a hoodie. However, surveillance footage showed that the individual wore a dark-colored jacket with a hood, dark-colored pants, and white shoes. At 10:13 p.m., the individual ran out of Hickman Flats with "his left arm . . . pumping in the air, and his right arm . . . tucked to the side of his body," actions which were "consistent with concealing an item on the right side of [the] body." Emergency services began receiving 911 calls from Hickman Flats at 10:14 p.m., reporting that there had been gunshots. When police officers arrived on scene, they discovered that Gillom had been shot. Gillom subsequently died from his injuries. Fifteen spent cartridge casings were recovered from the crime scene.

After the shooting, police officers seized several items of clothing from Karl's home, including a black jacket with a hood, black jeans, and white Nike shoes. These items were consistent with the clothes worn by the suspected shooter seen on surveillance footage. Karl testified that Cameron often left his clothes at her home and that these clothes belonged to Cameron.

In light of the ample circumstantial evidence connecting Cameron to the shooting, we conclude a reasonable jury could have found that Cameron possessed ammunition. *See Seals*, 915 F.3d at 1205 ("The verdict will be upheld if there is any interpretation of the evidence that could lead a reasonable jury to convict.").

Cameron also raises an as-applied challenge to 18 U.S.C. § 922(g)(1) under the Second Amendment. He claims § 922(g)(1) is unconstitutional as applied to him in light of the Supreme Court's decision in *Bruen*, where the Court held that the Second Amendment protects an individual right to carry a handgun for self-defense outside the home. Because Cameron challenges the constitutionality of § 922(g)(1) for the first time on appeal, we review for plain error. *See United States v. Voelz*, 66 F.4th 1155, 1161 (2023). To prevail under plain error review, Cameron must show: (1) error; (2) that is plain; (3) that affects his substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See id.*

We discern no plain error in light of *United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023). In *Jackson*, which was decided after *Bruen*, we rejected the defendant's as-applied challenge to § 922(g)(1) under the Second Amendment. *Id.* at 501-06. We held that nothing in *Bruen* "cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 501; *see United States v. Cunningham*, 70 F.4th 502, 506 (8th Cir. 2023) ("The longstanding prohibition on possession of firearms by felons is constitutional . . . ."). We also concluded that "there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)" as applied to a particular defendant. *Jackson*, 69 F.4th at 502; *see Cunningham*, 70 F.4th at 506 ("[The defendant] asserts that the Second Amendment guaranteed his right to possess a firearm . . . because neither of his prior offenses

-4-

qualified as a 'violent' offense. . . . This contention is foreclosed by *Jackson*."). Cameron attempts to distinguish his case from *Jackson* solely on the basis that he was convicted of being a felon in possession of ammunition as opposed to being a felon in possession of a firearm. However, we note that the right to possess a firearm implies a corresponding right to possess the ammunition necessary to use it. *Bruen* did not differentiate between regulations governing ammunition and regulations governing the firearms themselves. Given the coextensive nature of these rights, we discern no plain error.

Cameron also takes issue with the district court's admission of his prior felony convictions involving the use of firearms. Cameron was convicted in 2012 of being an unlawful drug user in possession of a firearm and ammunition. He was convicted in 2021 of attempted burglary in the first degree, child endangerment, domestic abuse assault causing bodily injury, false imprisonment, and harassment in the first degree. Cameron's 2021 convictions stemmed from a domestic violence incident in which Cameron struck his ex-wife in the head with a firearm, pointed the firearm at members of her family, and held the firearm to her son's head.

Because Cameron objected to the admission of his 2021 convictions at the district court, we review the district court's evidentiary ruling for an abuse of discretion. *See United States v. Halk*, 634 F.3d 482, 487 (8th Cir. 2011). A district court abuses its discretion by admitting evidence of a defendant's other crimes, wrongs, or bad acts when such evidence "clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." *Id.* As to the 2012 conviction, Cameron did not object to its admission at the district court. Accordingly, we review this evidentiary ruling for plain error. *See United States v. Abarca*, 61 F.4th 578, 580 (8th Cir. 2023).

Cameron contends his prior convictions were irrelevant, unfairly prejudicial, and too remote in time. As to relevance, Cameron's prior convictions were relevant to show that Cameron knew he was a felon and knowingly possessed ammunition on April 3, 2022. *See* Fed. R. Evid. 404(b) ("Evidence of any other crime, wrong,

or act . . . may be admissible . . . [to prove] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."); *Halk*, 634 F.3d at 487 ("Evidence that a defendant possessed a firearm on a previous occasion is relevant to show knowledge and intent."). Although Cameron contends he did not place his knowledge at issue, the Government was required to prove as an element of its case that Cameron knowingly possessed ammunition and knew he was a felon. *See Rehaif v. United States*, 588 U.S. ---, 139 S.Ct. 2191, 2194 (2019) ("To convict a defendant [under § 922(g),] the Government . . . must show that the defendant knew he possessed [ammunition] and also that he knew he had the relevant status when he possessed it."). Furthermore, Cameron's prior convictions were relevant to rebut several statements Cameron made to police officers following his arrest. Cameron told police officers "I don't play with guns, bro" and "I'm not a violent guy." Cameron's previous convictions contradicted these statements.

Turning to the issue of unfair prejudice, we have generally been "reluctant to find that [evidence of prior crimes] was unfairly prejudicial when the district court gave an appropriate limiting instruction, instructing the jury not to use the evidence as proof of the acts charged in the indictment." *United States v. Kent*, 531 F.3d 642, 651 (8th Cir. 2008). Here, the district court diminished the danger of any unfair prejudice by issuing an appropriate limiting instruction. We decline to find that the evidence of Cameron's prior convictions was unfairly prejudicial.

As to remoteness, "[t]here is no fixed period within which the prior acts must have occurred." *Halk*, 634 F.3d at 487. However, "[w]e have generally been reluctant to uphold the introduction of evidence relating to acts or crimes which occurred more than thirteen years prior to the conduct challenged." *Id.* Although Cameron's oldest conviction occurred ten years prior to the charged offense, Cameron's convictions were probative of his knowledge that he was a felon and possessed ammunition. We have, on previous occasions, affirmed the admission of much older convictions when the convictions were probative of the defendant's knowledge. *See, e.g.*, *United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006) (eighteen years); *United States v. Strong*, 415 F.3d 902, 905 (8th Cir. 2005) (sixteen

years).  Given the probative value of the convictions and our prior caselaw, we cannot say the district court abused its discretion, much less plainly erred, by admitting Cameron's prior convictions.

Finally, Cameron claims the Government engaged in prosecutorial misconduct during closing arguments by stating repeatedly that Cameron had "lie[d]" to police officers.  Specifically, the Government stated that Cameron lied to police officers about the following: his whereabouts on April 3, 2022, his relationship with Karl, the location of his phone, that he did not "play with guns," that he had "come to find peace in [his] life," and that he was "not a violent guy." Because Cameron failed to object to these statements during closing arguments, we review for plain error.  *See United States v. Two Elk*, 536 F.3d 890, 906 (8th Cir. 2008).

To prevail on a claim for prosecutorial misconduct, "a defendant must show both that the prosecutor's remarks were improper and that the remarks prejudiced his right to a fair trial." *United States v. Patterson*, 68 F.4th 402, 419 (8th Cir. 2023). In assessing prejudice, "we look to: (1) the cumulative effect of the improprieties; (2) the strength of the evidence against the defendant; and (3) the district court's curative action, if any." *Id.*

We do not find that the Government engaged in prosecutorial misconduct in the instant case.  "It is permissible for a prosecutor to interpret the evidence as indicating that the defendant is not telling the truth." *United States v. Frokjer*, 415 F.3d 865, 874 (8th Cir. 2005).  "[S]o long as prosecutors do not stray from the evidence and the reasonable inferences that may be drawn from it, they, no less than defense counsel, are free to use colorful and forceful language in their arguments to the jury." *Id.*  Here, evidence supported the Government's characterization of Cameron's statements.  For instance, Cameron told police officers that he was "not a violent guy."  However, only months earlier, Cameron had been convicted of attempted burglary in the first degree, child endangerment, domestic abuse assault causing bodily injury, false imprisonment, and harassment in the first degree.  The

Government did not act improperly by offering its reasonable interpretation of these facts to the jury. Even assuming the Government's remarks were improper, the remarks did not prejudice Cameron's right to a fair trial in light of the ample evidence of Cameron's guilt. We discern no plain error.

Accordingly, we affirm the judgment of the district court.[3]

_____

[3]Cameron also raises various claims of ineffective assistance of counsel. "We will consider ineffective-assistance claims on direct appeal only where the record has been fully developed, where not to act would amount to a plain miscarriage of justice, or where counsel's error is readily apparent." *United States v. Ramirez-Hernandez*, 449 F.3d 824, 827 (8th Cir. 2006). A properly developed record would include cross-examination by Cameron of his counsel detailing the specific advice Cameron received from said counsel. *See id.* Such evidence is absent from the record before us. Thus, we decline to consider Cameron's claims of ineffective assistance of counsel in this direct appeal.